**Case No. 24-7235**

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

_____

**YIPPEE ENTERTAINMENT, INC.**
*Appellee,*

v.

**BRITTANY MORRISON,**
*Appellant.*

_____

Appeal from the United States District Court for the
Southern District of California
Hon. Michael M. Anello, Case No. 24-cv-0797-MMA-KSC

_____

**APPELLANT'S OPENING BRIEF**

_____

**FOLEY & LARDNER LLP**
Rajiv Dharnidharka
Jeanette Barzelay
555 California Street, Suite 1700
San Francisco, CA 94104-1520
Telephone:  415.434.4484
Facsimile:   415.434.4507

John J. Atallah
555 S. Flower Street, Suite 3300
Los Angeles, CA 90071
Telephone:  213.972.4500
Facsimile:   213.486.0065

*Attorneys for Appellant*
*Yippee Entertainment, Inc.*

## CORPORATE DISCLOSURE STATEMENT

Appellant Yippee Entertainment, Inc. ("Yippee"), by and through its undersigned counsel, hereby discloses that Yippee is a Georgia 501(c)(3) not-for-profit corporation. Yippee is a wholly-owned subsidiary of Trinity Christian Center of Santa Ana, Inc.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT .................................................. i

TABLE OF AUTHORITIES ................................................................... iv

JURISDICTIONAL STATEMENT ..........................................................1

I.    The District Court's Subject Matter Jurisdiction. ...........................1

II.   This Court's Subject Matter Jurisdiction. ....................................1

III.  Relevant Dates Governing This Appeal. ......................................1

ISSUES PRESENTED FOR APPEAL .....................................................2

STATEMENT OF THE CASE .............................................................2

I.    Plaintiff's Allegations Against Yippee Under the VPPA. ..............2

II.   The Yippee TV Subscription Process, Integration with the Vimeo
      OTT Platform, and the Agreement to Arbitrate. .........................3
      A.    Yippee's Subscription Process. .........................................3
      B.    The Agreement to Arbitrate. ............................................5
      C.    The Motion to Compel Arbitration and the District Court's
            Order. ...........................................................................7

SUMMARY OF THE ARGUMENT .......................................................7

ARGUMENT ...................................................................................9

I.    The District Court Erred in Ruling that There Is No Enforceable
      Arbitration Agreement Between Plaintiff and Yippee. .................9
      A.    The District Court Erred in Ruling That Yippee Did Not
            Provide Reasonably Conspicuous Notice of the Terms.......11
      B.    The District Court Erred in Declining to Resolve Whether
            Plaintiff Unambiguously Manifested Her Assent—Which She
            Did. .............................................................................18

II.   The Arbitration Agreement Requires the Arbitrator to Determine
      Threshold Arbitrability Questions. ..........................................20

III.    Even If This Court Considers the Parties' Gateway Arbitrability Disputes, It Should Compel Arbitration of Plaintiff's Claim........................22

    A.    The Arbitration Agreement Encompasses Plaintiff's Claim..............22

    B.    Yippee Can Compel Arbitration of Plaintiff's Claim. ........................24

        i.    Equitable Estoppel Requires Arbitration of Plaintiff's Claim. ...................................................................................24

        ii.    Yippee Is A Third-Party Beneficiary of the Terms. ................27

CONCLUSION ....................................................................................................30

CERTIFICATE OF SERVICE .............................................................................32

# TABLE OF AUTHORITIES

Page(s)

Cases

*Adibzadeh v. Best Buy, Co.*,
  No. 20-cv-06257, 2021 WL 4440313 (N.D. Cal. Mar. 2, 2021) .........................19

*Aspire Home Healthcare, Inc. v. Therastaff, LLC*,
  No. 13-cv-2917, 2014 WL 12539917 (S.D. Cal. June 9, 2014) .........................22

*AT&T Mobility v. Concepcion*,
  563 U.S. 333 (2011) .........................................................................10

*Bentley v. Control Grp. Media Co.*,
  No. 19-cv-2437, 2020 WL 3639660 (S.D. Cal. July 6, 2020) ..................... 25, 26

*Berman v. Freedom Fin. Network, LLC*,
  30 F.4th 849 (9th Cir. 2022) ........................................................ 11, 18

*Brennan v. Opus Bank*,
  796 F.3d 1125 (9th Cir. 2015) ..................................................... 20, 21

*Burzdak v. Univ. Screen Arts, Inc.*,
  No. 21-cv-02148, 2021 WL 3621830 (N.D. Cal. Aug. 16, 2021) .......................18

*Cape Flattery Ltd. v. Titan Maritime, LLC*,
  647 F.3d 914 (9th Cir. 2011) .............................................................22

*Cavanaugh v. Fanatics, LLC*,
  738 F. Supp. 3d 1285 (E.D. Cal. 2024) .......................................... 15, 16

*Colgate v. JUUL Labs, Inc.*,
  402 F. Supp. 3d 728 (N.D. Cal. 2019) ....................................................17

*Dohrmann v. Intuit, Inc.*,
  823 Fed. App'x 482 (9th Cir. 2020) ................................... 9, 10, 14, 15

*Driskill v. Experian Info. Sols., Inc.*,
  No. 24-cv-00583, 2024 WL 4453292 (N.D. Cal. Oct. 8, 2024) ................. 14, 15

*Eastern Aviation Grp., Inc. v. Airborne Express, Inc.*,
  6 Cal. App. 4th 1448 (1992) .............................................................28

*Fernandez v. Debt Assistance Network, LLC*,
No. 19-cv-1442, 2020 WL 583973 (S.D. Cal. Feb. 6, 2020) .............................30

*Ferreira, v. Uber Techs., Inc.*,
No. 23-cv-00518, 2023 WL 7284161 (N.D. Cal. Nov. 3, 2023) ........................28

*Franklin v. Cmty. Reg'l Med. Ctr.*,
998 F.3d 867 (9th Cir. 2021) ........................................................ 24, 25

*Ghazizadeh v. Coursera, Inc.*,
737 F. Supp. 3d 911, (N.D. Cal. 2024) ................................................17

*Goldman v. KPMG LLP*,
173 Cal. App. 4th 209, 92 Cal.Rptr.3d 534 (2009) .............................25

*Goonewardene v. ADP, LLC*,
6 Cal. 5th 817 (2019) ...................................................... 27, 28, 30

*Hacohen v. BMW of N. Am., LLC*, No.,
21-cv-0464, 2021 WL 4352364 (C.D. Cal. July 23, 2021) ...............................29

*Henry Schein, Inc. v. Archer and White Sales, Inc.*,
586 U.S. 63 (2019) .........................................................................20

*Herrera v. Cathay Pac. Airways Ltd.*,
104 F.4th 702 (9th Cir. 2024) ........................................................ 24, 25

*Hicks v. Utiliquest, LLC*,
No. 24-cv-00911, 2024 WL 3011242 (E.D. Cal. June 11, 2024) ........................28

*Hooper v. Jerry Ins. Agency, LLC*,
675 F. Supp. 3d. 1027 (N.D. Cal. 2023) ...............................................15

*Howsam v. Dean Witter Reynolds, Inc.*,
537 U.S. 79 (2002) .........................................................................20

*Huntley v. Rosebud Econ. Dev. Corp.*,
No. 22-cv-1172, 2023 WL 5186247 (S.D. Cal. Aug. 11, 2023) ........................26

*In re JUUL Labs, Inc. Antitrust Litig.*,
No. 20-cv-02345, 2024 WL 589099 (N.D. Cal. Feb. 13, 2024) ................... 17, 18

*In re Mercury Interactive Corp. Sec. Litig.*,
  618 F.3d 988 (9th Cir. 2010) ................................................................19

*In re Pac. Fertility Ctr. Litig.*,
  814 Fed. App'x 206 (9th Cir. 2020) .....................................................27

*Keebaugh v. Warner Bros. Ent. Inc.*,
  100 F.4th 1005 (9th Cir. 2024) ...................................................... 12, 13

*Kramer v. Toyota Motor Corp.*,
  705 F.3d 1122 (9th Cir. 2013) ........................................................ 24, 25

*Lee v. Ticketmaster L.L.C.*,
  817 Fed. App'x 393 (9th Cir. 2020) ....................................................14

*Long v. Provide Commerce, Inc.*,
  245 Cal. App. 4th 855, 200 Cal. Rptr. 3d 117 (2016) ........................10

*Lopez v. Terra's Kitchen, LLC*,
  331 F. Supp. 3d 1092 (S.D. Cal. 2018) ................................................19

*Maynez v. Walmart, Inc.*,
  479 F. Supp. 3d 890 (C.D. Cal. 2020) .................................................12

*Meyer v. Uber Techs., Inc.*,
  868 F.3d 66 (2d Cir. 2017) ...................................................................14

*Mohamed v. Uber Techs., Inc.*,
  848 F.3d 1201 (9th Cir. 2016) ..............................................................24

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) ..................................................................................22

*Nail v. Lens.com, Inc.*,
  No. 24-cv-02531, 2024 WL 3723912 (C.D. Cal. June 20, 2024) ........17

*Nguyen v. Barnes & Noble Inc.*,
  763 F.3d 1171 (9th Cir. 2014) ...................................................... 9, 11, 19

*Oberstein v. Live Nation Ent., Inc.*,
  60 F.4th 505 (9th Cir. 2023) ..................................... 11, 13, 18, 19

*Ohring v. UniSea, Inc.*,
No. 21-35591, 2022 WL 1599127 (9th Cir. May 20, 2022) ................................ 22

*Patrick v. Running Warehouse, LLC*,
93 F.4th 468 (9th Cir. 2024) .................................................................... 21

*Pizarro v. QuinStreet, Inc.*,
No. 22-cv-02803, 2022 WL 3357838 (N.D. Cal. Aug. 15, 2022) ........................ 17

*Ramirez v. Ghilotti Bros. Inc.*,
941 F. Supp. 2d 1197 (N.D. Cal. 2013) ............................................................ 19

*Rangel v. Experian Info. Sols., Inc.*,
No. :24-cv-00642, 2024 WL 4203361 (E.D. Cal. Sept. 16, 2024) ...................... 14

*Rodriguez v. Equifax Info. Servs., LLC*,
No. 21-cv-01421, 2022 WL 2079710 (S.D. Cal. June 9, 2022) ................... 20, 21

*Ronay Family Ltd. P'ship v. Tweed*,
216 Cal. App. 4th 830 (2013) ............................................................ 27

*Sadlock v. Walt Disney Co.*,
No. 22-cv-09155, 2023 WL 4869245 (N.D. Cal. July 13, 2023) ...................... 18

*Sellers v. JustAnswer LLC*,
289 Cal. Rptr. 3d 1 (Cal. Ct. App. 2021) ............................................................ 11

*Simula, Inc. v. Autoliv, Inc.*,
175 F.3d 716 (9th Cir. 1999) ............................................................ 23

*Swift v. Zynga Game Network, Inc.*,
805 F. Supp. 2d 904 (N.D. Cal. 2011) ................................................. 12, 14

*Tawam v. Feld Ent. Inc.*,
684 F. Supp. 3d 1056 (S.D. Cal. 2023) ............................................................ 26

*Tradeline Enters. Pvt. Ltd. v. Jess Smith & Sons Cotton., LLC*,
2016 WL 7444857 (C.D. Cal. July 29, 2016) ............................................ 25

*Wilson v. Hatch Bank*,
No. 23cv813, 2024 WL 1355492 (S.D. Cal. Mar. 29, 2024) ............................ 27

*Wolf v. ClubCorp USA, Inc.*,
   No. 22-cv-1688, 2023 WL 4306693 (S.D. Cal. June 30, 2023) .........................26

Statutes

9 U.S.C. § 16(a)(1)(C) ...................................................................................1

18 U.S.C. § 2710 .......................................................................................1, 3

18 U.S.C. § 2710(a)(3) ................................................................................23

28 U.S.C. § 1331 ...........................................................................................1

Cal. Civ. Code § 1559 ................................................................................27

Rules

Fed. R. App. P. 4 ..........................................................................................2

Fed. R. App. P. 28(a)(4)(C) .........................................................................1

Fed. R. App. P. 28(a)(4)(D) .........................................................................1

## JURISDICTIONAL STATEMENT

### I.     The District Court's Subject Matter Jurisdiction.

The District Court had jurisdiction over this action under 28 U.S.C. § 1331 because it arises under a law of the United States, the Video Privacy and Protection Act (VPPA), 18 U.S.C. § 2710, *et seq*.  (ER-132.)

### II.     This Court's Subject Matter Jurisdiction.

The United States Court of Appeals for the Ninth Circuit has subject matter jurisdiction pursuant to 9 U.S.C. § 16(a)(1)(C), which authorizes an appeal from any order denying an application to compel arbitration under the Federal Arbitration Act ("FAA").  On July 17, 2024, Yippee filed a Motion To Compel The Individual Arbitration Of Plaintiff Brittany Morrison's Complaint (the "Motion"), which the District Court denied on October 31, 2024.  (ER-3-13.)   Under 9 U.S.C. § 16(a)(1)(C) and Fed. R. App. P. 28(a)(4)(D), that Order is properly appealable.

### III.     Relevant Dates Governing This Appeal.

Pursuant to Fed. R. App. P. 28(a)(4)(C) and Circuit Rule 28-2.2.(c), Yippee provides the following information:

i.     Date of entry of judgment or order appealed from: October 31, 2024

ii.    Date of filing of Yippee's Notice of Appeal: November 26, 2024

iii.    Rule under which Yippee's appeal is timely: Fed. R. App. P. 4, which requires a notice of appeal be filed within 30 days after the entry of judgment or the order appealed from.

## ISSUES PRESENTED FOR APPEAL

1.    Did the District Court err in concluding that the hyperlinked Vimeo OTT Viewer Terms of Service ("Terms") failed to put Plaintiff on sufficient notice of the agreement to arbitrate, and, thus, that there is no valid arbitration agreement?

2.    Did the District Court err in failing to submit Plaintiff's claim to arbitration pursuant to the agreement's clear and unmistakable delegation clause?

3.    Does the broad language requiring arbitration of any dispute relating to Plaintiff's use of the Vimeo platform encompass Plaintiff's VPPA claim?

4.    Does equitable estoppel require Plaintiff to arbitrate her claim because it arises under the Terms containing the arbitration agreement?

5.    Can Yippee enforce the arbitration agreement as an express third-party beneficiary of the Terms?

## STATEMENT OF THE CASE

### I.    Plaintiff's Allegations Against Yippee Under the VPPA.

Yippee is a producer of live and on-demand faith-based programming for children and families.  (ER-76.)  Yippee operates a website, yippee.tv, and a mobile application through which Yippee subscribers can stream Yippee TV content.  (ER-

76.)  A subscription to Yippee is required to watch Yippee's library of content.  (ER-76-77.)  Plaintiff alleges that she "created a Yippee TV account" and "paid for a Yippee TV subscription" from September 2023 through February 2024, during which she allegedly streamed Yippee TV content.  (ER-77; ER-145.)

Plaintiff brings a single claim against Yippee under the VPPA, a 1988 statute enacted before the digital age to govern consumers' privacy in their videotape rentals.  (ER-131.)  The VPPA prohibits "[a] video tape service provider [from] knowingly disclos[ing], to any person, personally identifiable information concerning any consumer of such provider."  18 U.S.C. § 2710.  Plaintiff alleges Yippee violated the VPPA when it allegedly disclosed her personally identifying information to third party, Twilio, for "marketing, advertising, and analytics purposes," when she viewed pre-recorded videos on the yippee.tv website using her computer browser.  (ER-145-46.)  Plaintiff seeks to bring her VPPA claim against Yippee on behalf of a purported class of similarly situated individuals.  (ER-146.)

## II.  The Yippee TV Subscription Process, Integration with the Vimeo OTT Platform, and the Agreement to Arbitrate.

### A.  Yippee's Subscription Process.

To subscribe to Yippee, a user must provide an email address and password, enter credit card information, agree to the Terms, and click on a "Start subscription" button.  (ER-77; ER-95.)  Every Yippee subscriber must expressly agree to the

3

Terms to access Yippee's services—one cannot become a subscriber without doing so.  (ER-77; ER-95.)

Yippee's subscription interface is a single webpage with no visual distractions or clutter.  (ER-77; ER-110.)  Above the "Start subscription" button, the page states, "By clicking below, you agree to our Terms of Service, Cookies Policy, Privacy Policy, and automatic renewal."  (ER-77-78; ER-110.) A conspicuous blue hyperlink to the Terms and the other listed policies is embedded in the otherwise black text, set off against the white background.  (ER-78; ER-110.)  When a user hovers over the Terms hyperlink, the cursor transforms into a hand with a finger in the "click" gesture.  (ER-78; ER-95.)

Once clicked, the Terms hyperlink directs to a different webpage featuring the Yippee logo at the top and containing the Vimeo OTT Terms, which govern Yippee TV subscribers' access to Yippee content.  (ER-78; ER-95; ER-98-108.)  Vimeo provides an over-the-top ("OTT") media platform[1] through which Yippee's subscription-based video streaming service provides content to Yippee subscribers like Plaintiff.  (ER-75; ER-93.)  The Terms explain that they govern the use of the "Vimeo OTT Service," which is defined as an "online platform that allows consumers like you to view video programs ('Programs') from content owners and

---

[1] An "over-the-top" platform refers to a technology that delivers streamed content to internet-connected devices.

licensors ('Producers') through Producer-branded websites and applications that we power"—websites like Yippee's.  (ER-98.)

The Vimeo OTT platform is a necessary component to access Yippee TV. (ER-78; ER-93-94.)  The Yippee website and mobile application integrate and rely upon the Vimeo OTT media platform to function by allowing Yippee to upload and manage its content and allowing Yippee's users to create and maintain subscriptions and view Yippee's content.  (ER-78; ER-93-94.)  Yippee's website and mobile application similarly integrate and rely on the Vimeo OTT platform to power Yippee's subscription service and process subscription payments.[2]  Without the Vimeo OTT platform, subscribers could not create and pay for Yippee TV accounts or stream Yippee content from Yippee's website or mobile application.  (ER-79; ER-93-94.)  Additionally, without the Vimeo OTT platform that facilitates subscriptions, Yippee would not obtain the name or email address of any subscribers, the alleged disclosure of which is the basis of Plaintiff's VPPA claim.  (ER-79; ER-93-94.)

## B.  <u>The Agreement to Arbitrate.</u>

The hyperlinked Terms highlight, in the second paragraph and in prominent bolded and capitalized language, the presence of a mandatory arbitration provision. (ER-79; ER-98.) ("Notice: Section 10 of this Agreement contains a mandatory

---

[2] The Yippee subscription webpage states that charges for a subscription will appear as "OTT* YIPPEE-THX U!"  (ER-78; ER-110.)

ARBITRATION AGREEMENT."). Section 10 "sets forth a binding arbitration agreement between you and Vimeo (the 'Arbitration Agreement')" under which the user agrees "[t]o arbitrate all claims relating to the Vimeo OTT Service." (ER-105.) Section 10.1 contains the following mandatory binding arbitration provision:

> The exclusive means of resolving any dispute or claim arising out of or relating to this Agreement (including any alleged breach thereof), or your use of the Vimeo OTT Service shall be BINDING ARBITRATION administered by JAMS pursuant to its Streamlined Arbitration Rules & Procedures as modified by our Arbitration Procedures.

(ER-79; ER-105.) (emphasis added).[3]

> Section 10.4, titled "Class-Action Waiver," sets forth a class action waiver:

> EACH PARTY WAIVES ITS RIGHT TO GO TO COURT, TO A TRIAL BY JURY, AND TO PARTICIPATE IN A CLASS ACTION, CLASS ARBITRATION, OR OTHER REPRESENTATIVE PROCEEDING WITH RESPECT TO ANY CLAIM SUBJECT TO ARBITRATION.

(ER-79; ER-106.)

The Terms provide, under Section 11, that the arbitration and class action waiver provisions extend to Yippee as a Producer, *i.e.*, a "content owner[] and licensor[]" that provides videos to consumers. (ER-79-80; ER-107.) Specifically, Section 11 provides that "[n]o third parties shall have any rights under this

---

[3] Section 10.5 of the Terms provides an exception for individual claims brought "in a small claims court of competent jurisdiction pursuant to Rule 1 of JAMS' Consumer Minimum Standards." (ER-79; ER-106.)

Agreement, *except that Producers may enforce the terms herein against [Yippee TV subscribers]*." (ER-79-80; ER-107 (emphasis added).) Under the Terms, Producers may—as Yippee does—offer subscription services, where "[f]or a recurring fee, you may stream the Programs offered within a Producer's subscription channel." (ER-80; ER-100.)

The subscription process described above was in effect in September 2023 when Plaintiff became a Yippee subscriber. (ER-80; ER-94-95.) The Terms, including the arbitration agreement and class action waiver, were active on Yippee's subscription page in September 2023. (ER-80; ER-94-95.)

C. <u>**The Motion to Compel Arbitration and the District Court's Order.**</u>

Yippee moved to compel individual arbitration of Plaintiff's VPPA claim under the Terms' arbitration agreement. (ER-66-128.) The District Court denied the Motion, finding no valid agreement to arbitrate. (ER-3-13.) This appeal followed.

## SUMMARY OF THE ARGUMENT

Plaintiff's claim against Yippee for its alleged violation of the VPPA is subject to mandatory arbitration pursuant to the applicable Terms of Service that governed her use of Yippee's services—namely, the Vimeo OTT Viewer Terms of Service. Vimeo provides an over-the-top ("OTT") media platform through which Yippee provides content to subscribers like Plaintiff. In registering for a Yippee TV account,

7

Plaintiff agreed to the Terms, including an arbitration provision requiring her to individually arbitrate any disputes broadly relating to or arising from her use of Vimeo's OTT platform. Because the Yippee service depends on the Vimeo platform—indeed, it cannot function without it—Plaintiff's Complaint in its entirety is rooted in and relates to her use of the Vimeo platform, and is arbitrable.

Yippee provided adequate notice to Plaintiff that by subscribing to its services, she was agreeing to the Terms, including the arbitration agreement. Yippee employed hallmarks of conspicuousness on its webpage that dozens of courts in this circuit (and others) routinely find sufficient to put users on notice and bind them to hyperlinked terms and the arbitration provisions within them. Despite these facts, the District Court erroneously concluded that Yippee's notice was not sufficient and, thus, that there is no valid arbitration agreement between Plaintiff and Yippee to enforce. In doing so, the District Court was guided by inapposite case law that is either materially distinguishable or supports the adequacy of Yippee's website disclosure, consistent with dozens of courts and the general federal policy favoring arbitration. This Court, reviewing this issue *de novo*, should reverse.

As for the other issues raised below that the District Court did not reach, this Court lacks authority to decide them because the parties clearly and unmistakably delegated those issues to the arbitrator in the first instance. Whether Plaintiff's VPPA claim is arbitrable (it is), and whether Yippee can enforce the arbitration

8

agreement against Plaintiff (it can), are threshold arbitrability questions reserved to the arbitrator here, which should be compelled to arbitration on remand.

Even if this Court decides to reach these gateway issues in lieu of the arbitrator, the result should be the same and the Court should compel arbitration. Plaintiff's VPPA claim plainly falls within the arbitration agreement's broad scope, which governs disputes "relating to" her use of the services—with all doubts to be resolved in favor of arbitration. Similarly, Yippee can enforce the arbitration agreement under an equitable estoppel or third-party beneficiary theory because: (1) Plaintiff plainly has accepted the benefits of the Terms in pursuing her VPPA claim, so cannot disavow them for the purpose of avoiding arbitration; and (2) the Terms demonstrate an express intent to benefit Yippee as a third-party beneficiary by, among other things, granting it express rights to enforce the Terms, and the arbitration agreement specifically, as a "Producer" under the agreement.

For all of these reasons, and as argued below, the District Court erred in denying Yippee's motion to compel arbitration. This Court should reverse.

## ARGUMENT

### I. The District Court Erred in Ruling that There Is No Enforceable Arbitration Agreement Between Plaintiff and Yippee.

The Court should reverse the Order because the District Court erred in ruling that the Terms do not constitute a valid and enforceable arbitration agreement between Plaintiff and Yippee based on Plaintiff's constructive notice of the Terms.

9

This Court "review[s] the denial of a motion to compel arbitration *de novo*." *Dohrmann v. Intuit, Inc.*, 823 Fed. App'x 482, 483 (9th Cir. 2020) (citing *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014). This Court also determines *de novo* "whether a hyperlink to a website's terms of use is sufficiently conspicuous under California law if the 'material evidence consists exclusively of screenshots from the Web site … and the authenticity of these screenshots is not subject to factual dispute.'" *Id.* (quoting *Long v. Provide Commerce, Inc.*, 245 Cal. App. 4th 855, 200 Cal. Rptr. 3d 117, 123 (2016)).

The District Court correctly determined that the Terms are a sign-in wrap agreement—which are routinely enforced—because the Yippee subscription page contains a hyperlink to the Terms "preceded or followed by statements informing consumers that by completing their purchase, creating an account, or clicking a button, or taking some other action, they accept the terms linked." (ER-9.) The District Court erred, however, in finding that Plaintiff and Yippee did not mutually assent to the Terms.

As a threshold matter, courts must "rigorously enforce an agreement to arbitrate," consistent with the general federal policy favoring arbitration. (ER-5.) (citing *AT&T Mobility v. Concepcion*, 563 U.S. 333, 339 (2011)). Courts in this circuit must enforce an arbitration agreement based on constructive notice if: "(1) the website provides reasonably conspicuous notice of the terms to which the

10

consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022); *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 513-15 (9th Cir. 2023) ("objective-reasonableness standard" applies to two-part mutual assent test for sign-in wrap agreements). The District Court erred in finding that the Terms failed to provide adequate notice and in failing to reach the second prong of the test, under which Plaintiff unambiguously manifested her assent to the Terms.

### A. The District Court Erred in Ruling That Yippee Did Not Provide Reasonably Conspicuous Notice of the Terms.

The District Court's ruling that Yippee failed to provide reasonably conspicuous notice of the arbitration agreement is erroneous and must be reversed. Notice is considered "reasonably conspicuous" if it is "'displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it.'" *Oberstein*, 60 F.4th at 515 (quoting *Berman*, 30 F.4th at 856). This analysis hinges upon "the conspicuousness and placement of the 'Terms of Use' hyperlink, other notices given to users of the terms of use, and the website's general design . . . ." *Id.* (quoting *Nguyen*, 763 F.3d at 1177). In analyzing the conspicuousness of the notice, courts also consider the "context of the transaction." *Id.* at 516. Courts are inclined to enforce hyperlinked terms if, in the context of the transaction, the website user would "contemplate[] some sort of continuing

11

relationship" that would make them more likely to scrutinize the website for contractual terms. *Id.* (quoting *Sellers v. JustAnswer LLC*, 289 Cal. Rptr. 3d 1, 29 (Cal. Ct. App. 2021)).[4]

Here, the Terms, including the arbitration provision, satisfy each aspect of the "reasonably conspicuous" test. The District Court first correctly assessed that the context of the transaction between Plaintiff and Yippee contemplated an ongoing relationship—a continuing subscription—that weighs in favor of enforcing the arbitration agreement. (ER-10-11 (correctly finding that Yippee's "subscription-based model" represents a "continuing, interactive, relationship" that "weighs in favor of finding Defendant's sign-in wrap agreement enforceable")); *see Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1020-21 (9th Cir. 2024) (holding user's downloading of mobile app satisfies transactional context element because user "necessarily anticipates ongoing access to that app").

The District Court took a wrong turn, however, in analyzing the visual placement of the Terms' hyperlink and the general design of the Yippee subscription sign-up page. (ER-11-13.) Contrary to the District Court's findings, the Yippee

---

[4] So long as the terms are reasonably conspicuous, it does not matter whether the user actually read them. *See Maynez v. Walmart, Inc.*, 479 F. Supp. 3d 890, 895 (C.D. Cal. 2020) (hybrid clickwrap provided constructive notice despite the plaintiff's claim she was "never aware" of the arbitration agreement and "never understood" she was agreeing to arbitrate); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 908 (N.D. Cal. 2011) (enforcing hybrid clickwrap despite "no record of whether Plaintiff . . . ever clicked on the blue hyperlinked . . . Terms").

webpage has the hallmarks that courts routinely find sufficient to constitute adequate notice. First, the hyperlink to the Terms "is conspicuously distinguished from the surrounding text in bright blue font, making its presence readily apparent"—a factor this Court finds "crucial[]" to the analysis. *Oberstein*, 60 F.4th at 516 (finding terms reasonably conspicuous); (ER-8; ER-10; ER-94; ER-110.) The notice and hyperlink also were placed directly above the "Start subscription" action button, in normal-size text that is similar in size to other areas on the page and *not* significantly "smaller than that on the page generally." (ER-11; ER-94; ER-110); *see Oberstein*, 60 F.4th at 515-16 (finding hyperlinked terms that appeared above account creation, sign-in, and purchase order buttons were "reasonably conspicuous"). Moreover, although the subscription page contains some additional promotional language and illustrations on the lefthand side, the webpage is not cluttered, and the promotional text does not draw a user's attention away from the notice on the righthand side— which is readily visible when selecting the "Start subscription" action button below. (ER-94; ER-110; *cf.* ER-11-12.)

Numerous courts have held that similar features to those on the Yippee sign-up page, including blue hyperlinked text displayed near the relevant action button, are sufficient to support constructive notice. *See, e.g.*, *Keebaugh*, 100 F.4th at 1020-21 (notice was conspicuous where "[t]he design elements use 'a contrasting font color' making the notice legible" and notice was "[d]irectly beneath the operative

Play button"); *Oberstein*, 60 F.4th at 516 (notice was reasonably conspicuous where text was displayed "above or below the action button" and hyperlinks were in contrasting "bright blue font"); *Dohrmann*, 823 Fed. App'x at 484 (hyperlink to Terms of Use was conspicuous where text below sign-in button included list of terms in "light blue hyperlinks which, if clicked, directed the user to a new webpage"); *Lee v. Ticketmaster L.L.C.*, 817 Fed. App'x 393, 394-95 (9th Cir. 2020) (plaintiff assented to arbitration provision in Terms of Use where hyperlink to "Terms of Use" was displayed in blue font near "Place Order" button); *Driskill v. Experian Info. Sols., Inc.*, No. 24-cv-00583, 2024 WL 4453292, at *2-*4 (N.D. Cal. Oct. 8, 2024) (notice was reasonably conspicuous where defendant provided blue hyperlink to Terms of Use adjacent to "Create Your Account" button); *Rangel v. Experian Info. Sols., Inc.*, No. :24-cv-00642, 2024 WL 4203361, at *3-*4 (E.D. Cal. Sept. 16, 2024) (inquiry notice satisfied where terms were "off set in a blue hyperlink that, if clicked, would have presented Plaintiffs with the full text of the Terms of Use, including the arbitration agreement"); *Swift*, 805 F. Supp. 2d at 908 (enforcing hybrid clickwrap where terms appeared as a blue hyperlink near the "Allow" action button); *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 78 (2d Cir. 2017) (enforcing arbitration clause in terms that appeared as blue hyperlinks below registration button).

Despite acknowledging that Yippee's sign-up page includes hallmark features of reasonable conspicuousness, the District Court erroneously discounted these

14

factors because "the font is not underlined nor completely capitalized and is small in proportion to most of the text on the page," the notice "is within an eight-line paragraph," and "the 'Terms of Service' hyperlink comes in a sequence of hyperlinks (albeit separated by black-font commas)." (ER-11.)  But no authority holds that a hyperlink must have multiple contrasting textual features to provide adequate notice—rather, courts have explicitly held the opposite.  *See Hooper v. Jerry Ins. Agency, LLC, 675 F. Supp. 3d. 1027, 1036 (N.D. Cal. 2023)* ("Other courts, including this one, have similarly held that a different font color is sufficient to make a hyperlink reasonably conspicuous *even if the hyperlink is neither underlined nor capitalized*.") (emphasis added) (citing cases).  Courts likewise enforce arbitration agreements in hyperlinked terms even where the notice contains multiple hyperlinks or multiple lines of text.  *See*, *e.g.*, *Dohrmann*, 823 Fed. App'x at 484 (notice of agreement to "Turbo Terms of Use, [and] TurboTax Terms of Use" was conspicuous where two sets of terms appeared as blue hyperlinks set off by a black comma); *Driskill*, 2024 WL 4453292, at *2-*4 (enforcing notice contained in 15-line paragraph containing multiple hyperlinks).  What matters is that the design features are sufficient to call the user's attention to the hyperlinked terms—as they plainly are here, and as the above case law demonstrates.

The District Court compounded its error by relying on inapposite case law. (ER-11-12.)  The District Court relied most heavily on *Cavanaugh v. Fanatics, LLC,*

738 F. Supp. 3d 1285 (E.D. Cal. 2024), where the court "rejected a hyperlink on a membership registration page that contained informational fields stacked vertically upon a 'Create an Account,' under which is a sentence stating, in gray, "[b]y signing up, you agree to our Terms of Use and Privacy Policy."  (ER-12 (citing *Cavanaugh,* 738 F. Supp. 3d at 1296*)*.)  But the District Court overlooked *Cavanaugh*'s principal reasoning for rejecting the registration page notice.  The *Cavanaugh* court acknowledged that "hyperlinks that are presented in a contrasting color may be sufficiently conspicuous" (as they are here)—but because the hyperlink was only *underlined,* the court would not "depart from the overall trend that finds hyperlinks must be offset in a more obvious way than the underlining used" on the sign-in page. *Cavanaugh*, 738 F. Supp. 3d at 1296.  Those are not the facts here.  What is more, the *Cavanaugh* court found *sufficient* a subsequent Complete Order/Place Order screen that is substantially similar to Yippee's because that notice—like Yippee's here—contained a hyperlink to the terms "accented in blue" and was "presented immediately below the checkout button, not in an entirely separate section of the screen." *Id.* at 1296-97 (finding notice sufficient even though the hyperlink text was "in slightly smaller font than some other elements on the page"); *cf.* (ER-12.)  Put simply, *Cavanaugh* supports reversal and a finding that the Yippee notice is reasonably conspicuous.

The other authorities relied on by the District Court are likewise inapposite or

distinguishable.[5]  In *Colgate v. JUUL Labs, Inc.*, for instance, the court found insufficient two sign-up pages with features that are far less conspicuous than those at issue here.  The first version contained hyperlinks that were "not a different color, underlined, italicized, or in any way visually distinct from the surrounding text" and were smaller than any other font on the page.  402 F. Supp. 3d 728, 764-65 (N.D. Cal. 2019).  Although the second version changed the color of the hyperlinks to blue, that was not enough because of the small font size and potential confusion arising from a "Forgot Password?" hyperlink above, which was more prominently displayed in a different color, underlined, and in larger font.  *Id.* at 765-66.

Notably, the same court later found that a modified webpage with features comparable to Yippee's—namely, placement of the disclosure and blue hyperlinked terms below a "SIGN IN button"—*was sufficient* to provide notice.  *See In re JUUL Labs, Inc. Antitrust Litig.*, No. 20-cv-02345, 2024 WL 589099, at *2-3 (N.D. Cal. Feb. 13, 2024).  The court took note of the "number of recent opinions from this

---

[5] The District Court also erred in attempting to distinguish this case from others where "courts found a hyperlink to terms and conditions sufficiently conspicuous." (ER-12-13.)  The webpages found adequate in those cases were not so markedly different from Yippee's as to compel a different finding here.  *See Nail v. Lens.com, Inc.*, No. 24-cv-02531, 2024 WL 3723912, at *4 (C.D. Cal. June 20, 2024) (finding same-color underlined hyperlink in small font under "Continue" button sufficient); *Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911, (N.D. Cal. 2024) (finding same-color bolded hyperlink in smaller font under "Sign Up" button sufficient); *Pizarro v. QuinStreet, Inc.*, No. 22-cv-02803, 2022 WL 3357838, at *1-*3 (N.D. Cal. Aug. 15, 2022) (finding same-color underlined hyperlinks in small print and multiple lines of text under larger action button sufficient where "surrounded by text no larger than the notice itself").

District [that] have found adequate constructive notice when considering websites where the log in button was immediately above disclosures that, by clicking continue or by signing into an account, the user agreed to terms of use that included an arbitration agreement." *Id.* That reasoning applies equally here.[6] The District Court erred in finding that the Yippee notice was not reasonably conspicuous.

### B. The District Court Erred in Declining to Resolve Whether Plaintiff Unambiguously Manifested Her Assent—Which She Did.

The District Court likewise erred in failing to reach the second prong of the mutual assent analysis: whether Plaintiff took some action that unambiguously manifested her assent to the Terms. *Berman*, 30 F.4th at 856. This part of the test "is relatively straightforward." *Oberstein*, 60 F.4th at 515. Plaintiff's "click of a button can be construed as an unambiguous manifestation of assent" if she was "explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement." *Berman*, 30 F.4th at 857-58 (the notice must "explicitly notify a user of the legal significance of the action she must take to enter

---

[6] *Burzdak v. Univ. Screen Arts, Inc.*, No. 21-cv-02148, 2021 WL 3621830 (N.D. Cal. Aug. 16, 2021), and *Sadlock v. Walt Disney Co.*, No. 22-cv-09155, 2023 WL 4869245 (N.D. Cal. July 13, 2023), do not change the analysis. (*See* ER-11.) In *Burzdak*, the disclosure was insufficient because the hyperlinks were merely underlined and the screens contained numerous other illustrations, fonts, and colors that distracted the eye from the Terms of Use. 2021 WL 3621830, at *2, *6. In *Sadlock*, the disclosure contained "muted" blue hyperlink text that did not stand out against a black background and contained larger promotional language above that was "designed to upsell the Disney Bundle" and not limited to "registration mechanics." 2023 WL 4869245, at *9-10. Both cases are distinguishable, and the District Court's reliance on them was erroneous.

into a contractual agreement").

Here, there is no dispute that the second prong is satisfied and that Plaintiff unambiguously manifested her assent when she clicked the "Start subscription" button placed below Yippee's disclosure that "By clicking below, you agree to our Terms of Service[.]" (ER-78; ER-110); *see Oberstein*, 60 F.4th at 515-16 ("The language 'By continuing past this page and clicking [the button], you agree to our Terms of Use' clearly denotes 'that continued use will act as a manifestation of the user's intent to be bound.'") (alteration in original) (quoting *Nguyen*, 763 F.3d at 1177); *Adibzadeh v. Best Buy, Co.*, No. 20-cv-06257, 2021 WL 4440313, at *5 (N.D. Cal. Mar. 2, 2021) (user assented to arbitration provision when clicking "Sign In" button on website where users must agree to the terms before proceeding); *Lopez v. Terra's Kitchen, LLC*, 331 F. Supp. 3d 1092, 1098 (S.D. Cal. 2018) (Anello, J.) (hybrid online agreement "is binding where the consumer is provided with an opportunity to review the terms of service in the form of a hyperlink immediately under an 'I Accept' button and then clicks that button"). Indeed, Plaintiff conceded this point by failing to address it below. (ER-29-65); *see Ramirez v. Ghilotti Bros. Inc.*, 941 F. Supp. 2d 1197, 1210 (N.D. Cal. 2013) (party conceded argument by failing to address it in opposition); *see also In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010) (discussing "general rule" against entertaining arguments on appeal that were not presented before the district court).

This Court should reverse the District Court's erroneous decision and should find that Plaintiff assented to the Terms' arbitration agreement.

## II.  The Arbitration Agreement Requires the Arbitrator to Determine Threshold Arbitrability Questions.

Because the District Court erred in finding that there was no valid arbitration agreement, the District Court likewise erred in failing to examine the arbitrability of Plaintiff's claim.  (ER-13.)  The District Court should have reached this issue and determined that the Terms clearly and unambiguously delegate arbitrability questions to the arbitrator.  "Generally, in deciding whether to compel arbitration, a court must determine two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)).  But "these gateway issues can be expressly delegated to the arbitrator where 'the parties *clearly* and *unmistakably* provide otherwise.'" *Id.* (citation omitted).  In such circumstances, "a court may not override the contract" and has "no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 586 U.S. 63, 68 (2019).

There is "clear and unmistakable evidence" that Plaintiff and Yippee "agreed to arbitrate arbitrability" because the Terms' arbitration agreement expressly states that "the arbitrator will decide all issues related to the dispute, *including the question of arbitrability* . . . ."  (ER-105 (emphasis added)); *see, e.g.*, *Rodriguez v. Equifax*

*Info. Servs., LLC*, No. 21-cv-01421, 2022 WL 2079710, at \*5 (S.D. Cal. June 9, 2022) (express delegation language coupled with incorporation of AAA rules constituted clear and unmistakable delegation of arbitrability). In addition, the agreement expressly incorporates the JAMS procedural rules, which provide for the delegation of arbitrability.[7] *See Brennan*, 796 F.3d at 1130 (collecting cases and holding that AAA rule providing that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the … validity of the arbitration agreement" was a clear delegation of arbitrability); *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 481 (9th Cir. 2024) (holding "[i]ncorporation of the JAMS arbitration rules by reference constitutes clear and unmistakable evidence that the parties agree to arbitrate arbitrability").

Accordingly, the arbitration agreement requires this Court to delegate any gateway arbitrability issues, including whether Plaintiff's claim is covered by the arbitration provision (it is) and whether Yippee can enforce the Terms (it can). *See Rodriguez*, 2022 WL 2079710, at \*8 (whether non-signatory could compel arbitration was question for arbitrator in view of delegation clause). This Court

---

[7] The agreement provides that any arbitration will be "administered by JAMS pursuant to its Streamlined Arbitration Rules & Procedures." (ER-105.) Those rules, in turn, delegate arbitrability by providing that "[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which [a]rbitration is sought, and who are proper [p]arties to the [a]rbitration, shall be submitted to and ruled on by the [a]rbitrator." (ER-83-84; ER-119-20.)

should reverse with instructions to compel arbitration and submit these threshold disputes to an arbitrator. *See Ohring v. UniSea, Inc.*, No. 21-35591, 2022 WL 1599127, at *1 (9th Cir. May 20, 2022) (reversing and remanding with instructions to compel arbitration where plaintiff agreed to and was bound by delegation clause).

## III. Even If This Court Considers the Parties' Gateway Arbitrability Disputes, It Should Compel Arbitration of Plaintiff's Claim.

In light of the agreement's clear delegation provision, under the FAA, this Court's inquiry should end here. But even if this Court finds that it has jurisdiction to determine arbitrability, it should compel arbitration because (1) Plaintiff's VPPA claim falls within the broad arbitration provision, and (2) Yippee can enforce the arbitration provision under equitable estoppel and third-party beneficiary principles.

### A. The Arbitration Agreement Encompasses Plaintiff's Claim.

Although the District Court did not reach this issue, there is no legitimate dispute that the Terms' broad arbitration agreement encompasses Plaintiff's VPPA claim against Yippee. Agreements requiring arbitration of any dispute "relating to" a particular matter are broad in scope. *See*, *e.g.*, *Cape Flattery Ltd. v. Titan Maritime, LLC*, 647 F.3d 914, 922 (9th Cir. 2011); *accord Aspire Home Healthcare, Inc. v. Therastaff, LLC*, No. 13-cv-2917, 2014 WL 12539917, at *2 (S.D. Cal. June 9, 2014) (arbitration agreement that included both "arising out of" and "relating to" language was broad). Moreover, federal law dictates that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H.*

22

*Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also*

*Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999) ("[F]actual allegations

need only 'touch matters' covered by the contract containing the arbitration clause

and all doubts are to be resolved in favor of arbitrability.").

Here, the scope of the Terms' arbitration provision is broad and all-embracing.

The Terms provide that "the exclusive means of resolving any dispute or claim

arising out of or relating to . . . your use of the Vimeo OTT Service shall be

BINDING ARBITRATION." (ER-105.) Plaintiff's VPPA claim against Yippee

unquestionably is predicated on—and thus, relates to—her "use of the Vimeo OTT

Service" to subscribe to and receive Yippee's videos. Without the Vimeo OTT

platform, Yippee could not offer subscriptions, obtain subscriber information, or

offer videos to its subscribers, let alone collect and then disclose any subscriber's

personal information as required for an alleged VPPA violation. (ER-85; ER-93-

95.) Consequently, without the Vimeo OTT platform, Plaintiff would not be able to

access any video content from Yippee. (ER-85; ER-93-95.)

In other words, without some reliance on and relationship to the Vimeo OTT

Service, Plaintiff could not plead the foundational allegations necessary to state her

VPPA claim—including that Yippee allegedly disclosed her "personally identifiable

information" regarding the "specific video materials or services" she obtained

through Yippee. 18 U.S.C. § 2710(a)(3). Accordingly, any claim related to

23

subscribing to or viewing Yippee TV content—including Plaintiff's VPPA claim against Yippee which arises from both (*see* ER-148-49)—necessarily relates to use of the Vimeo OTT service and comes within the arbitration agreement's plain terms. *See Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1214 (9th Cir. 2016) (an arbitration agreement must "be enforced according to its terms").

### B. Yippee Can Compel Arbitration of Plaintiff's Claim.

If this Court reaches the issue, Yippee can compel arbitration of Plaintiff's VPPA claim against it because it can enforce the Terms under state law equitable estoppel and/or third-party beneficiary principles. *See Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867, 870 (9th Cir. 2021) ("[A] litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement.") (quoting *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013)). Both principles apply here because the claim is founded upon Plaintiff's use of the Vimeo OTT platform, including its Terms, and because Yippee is an intended beneficiary of the Terms.

### i. Equitable Estoppel Requires Arbitration of Plaintiff's Claim.

Yippee can enforce the arbitration agreement against Plaintiff under the doctrine of equitable estoppel because Plaintiff's claims are "intimately founded in and intertwined with the underlying contract." *Herrera v. Cathay Pac. Airways Ltd.*, 104 F.4th 702, 707 (9th Cir. 2024) (quoting *Kramer*, 705 F.3d at 1128-29).

"Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Kramer*, 705 F.3d at 1128. Courts consider whether the claims "are in *any way* founded in or bound up with the terms." *Id.* at 710 (quoting *Goldman v. KPMG LLP*, 173 Cal. App. 4th 209, 219, 92 Cal.Rptr.3d 534 (2009)); *Franklin*, 998 F.3d at 875 (non-signatory could compel arbitration where "the substance" of plaintiff's claims was "so intertwined with" employment relationship governed by the Arbitration Agreement). "The 'linchpin' for equitable estoppel is fairness." *Herrera*, 104 F.4th, at 710 (quoting *Kramer*, 705 F.3d at 1133); *Bentley v. Control Grp. Media Co.*, No. 19-cv-2437, 2020 WL 3639660, at *3 (S.D. Cal. July 6, 2020) ("The doctrine recognizes that '[i]t is unfair for a party to rely on a contract when it works to its advantage[ ] and repudiate it when it works to its disadvantage.'" (alterations in original) (quoting *Tradeline Enters. Pvt. Ltd. v. Jess Smith & Sons Cotton., LLC*, 2016 WL 7444857, at *9 (C.D. Cal. July 29, 2016))).

As the Complaint makes clear, Plaintiff's VPPA claim against Yippee is wholly dependent upon accessing Yippee content through the Vimeo OTT platform as a Yippee subscriber. (*See, e.g.*, ER-135 ("To watch any video . . . users need to pay a subscription fee of either $8 per month of $49 per year. Video content is otherwise locked or not accessible . . . ."); ER-135 ([A]ccessing Defendant's pre-recorded video content is contingent on paying Defendant a subscription fee"); ER-

25

142 ("In or about September 2023, Plaintiff Morrison created a Yippee TV account, paid for a Yippee TV subscription, and accessed Yippee TV on her web browser."); (ER-145 ("Plaintiff Morrison used a web browser to access Yippee TV videos through her account until February 2024.")); *see Tawam v. Feld Ent. Inc.*, 684 F. Supp. 3d 1056, 1061 (S.D. Cal. 2023) (the VPPA requires "the existence of a factual nexus or relationship between the subscription provided by the defendant and the defendant's allegedly actionable video content"). But because one cannot subscribe to Yippee or access content without accepting the Terms—and because there can be no VPPA claim without such subscription and access—Plaintiff's assent to the Terms is a necessary "foundation" of her Complaint. *Wolf v. ClubCorp USA, Inc.*, No. 22-cv-1688, 2023 WL 4306693, at *6 (S.D. Cal. June 30, 2023); *Huntley v. Rosebud Econ. Dev. Corp.*, No. 22-cv-1172, 2023 WL 5186247, at *3 (S.D. Cal. Aug. 11, 2023) (contract terms were "crux" of plaintiff's claims where "there is no harm to Plaintiffs and no scheme to challenge" without them); *Bentley*, 2020 WL 3639660, at *4 (equitable estoppel required plaintiffs to arbitrate where their "Complaint arises out of, relates to, and exploits the benefits of [] subscriptions" to Defendants' websites).

Similarly, without the Vimeo OTT platform, Yippee could not have obtained Plaintiff's personal information through her Yippee subscription—the alleged disclosure of which forms the crux of her VPPA claim. (ER-85; ER-94-95.)

26

Because Plaintiff would have no such claim without the subscription to Yippee, and because that subscription *required* her assent to the Terms, she is estopped from now repudiating the Terms to avoid arbitrating disputes arising under them.[8]  *See Wilson v. Hatch Bank*, No. 23cv813, 2024 WL 1355492, at *9 (S.D. Cal. Mar. 29, 2024) (compelling arbitration based on doctrine of equitable estoppel because "[i]f not for the TOS, Hatch Bank would have never been able to possess, let alone control, how Plaintiff's personal information would be handled").

### ii.  Yippee Is A Third-Party Beneficiary of the Terms.

Yippee also may enforce the Terms and its arbitration agreement as an express third-party beneficiary.  *E.g.*, *Ronay Family Ltd. P'ship v. Tweed*, 216 Cal. App. 4th 830, 838 (2013) (holding "a third party beneficiary of an arbitration agreement may enforce it"); *see also* Cal. Civ. Code § 1559.  California has adopted a three-part test to determine whether a contract intends to benefit a third party, which analyzes:

> (1) whether the third party would in fact benefit from the contract, but also (2) whether a motivating purpose of the contracting parties was to provide a benefit to the third party, and (3) whether permitting a third party to [enforce the contract] is consistent with the objectives of the contract and reasonable expectations of the parties.

*Goonewardene v. ADP, LLC*, 6 Cal. 5th 817, 830 (2019).  Courts applying this test may look to "the express provisions of the contract at issue, as well as all of the

---

[8] Plaintiff's omission of the Terms from her Complaint does not change the analysis.  *See, e.g.*, *In re Pac. Fertility Ctr. Litig.*, 814 Fed. App'x 206, 209 (9th Cir. 2020) (granting non-signatories' motion to compel arbitration "[e]ven though Plaintiffs do not mention the [contract containing the arbitration clause]").

relevant circumstances under which the contract was agreed to . . . ." *Id.*; *see also Eastern Aviation Grp., Inc. v. Airborne Express, Inc.*, 6 Cal. App. 4th 1448, 1452 (1992) ("Whether the third party is an intended beneficiary . . . involves construction of the intention of the parties, gathered from reading the contract as a whole in light of the circumstances under which it was entered.").

The third-party beneficiary test is easily satisfied here. Under the first prong, the Terms—and the arbitration agreement specifically—benefit Yippee in several key respects. Critically, the Terms and arbitration agreement expressly permit Yippee to enforce them and to compel arbitration of disputes arising from use of the Vimeo OTT platform. (ER-107 (Plaintiff agreed that "any dispute with a Producer" such as Yippee "arising out of or relating to your purchase or viewing of a Producer's Program or subscription channel shall be resolved by BINDING ARBITRATION"); ER-107 ("Producers may enforce the terms herein against you" as exception to general provision against third-party beneficiaries).) The ability to compel arbitration alone is a sufficient benefit under *Goonewardene*. *See Ferreira, v. Uber Techs., Inc.*, No. 23-cv-00518, 2023 WL 7284161, at *5 (N.D. Cal. Nov. 3, 2023) (ability to compel arbitration deemed a "benefit" under terms); *Hicks v. Utiliquest, LLC*, No. 24-cv-00911, 2024 WL 3011242, at *3 (E.D. Cal. June 11, 2024) (same).

In addition, Yippee receives numerous other rights and benefits through the Terms—among them, a right to indemnification if a subscriber (such as Plaintiff)

makes unauthorized use of any program on the platform. (ER-104-05; ER-107.) The Terms also expressly limit the license that subscribers obtain to stream Yippee's content and limit Yippee's liability for, among other things, damages related to any disputes with subscribers. (ER-104.) These benefits readily satisfy the first prong.

The Terms likewise evince a clear motivating purpose to benefit Yippee so as to satisfy the second prong. The Terms expressly grant rights to "Producers" (a term that clearly encompasses Yippee) to "enforce the terms herein against" Yippee subscribers. (ER-107.) This alone is sufficient to demonstrate a "motivating purpose" to benefit Yippee. *See Hacohen v. BMW of N. Am., LLC*, No. 21-cv-0464, 2021 WL 4352364, at *5 (C.D. Cal. July 23, 2021) (arbitration agreement that specifically referenced third parties demonstrated a clear intent to benefit them). This intent is manifested elsewhere in the Terms, too. For instance, the Terms include "Producers" in the Terms' representations and warranties disclaimer (Section 7) and limitation of liability provision (Section 8). (ER-103-04 ("To the maximum extent permitted by law, Vimeo, its parent, directors, officers, employees, representatives, consultants, agents, suppliers, and partners (*including Producers*) shall not be liable…") (emphasis added).) And "Producers" are expressly encompassed by the Terms' "Indemnification," "Force Majeure," and "No Waiver" provisions. (ER-103-04.) Taken together, these provisions express an unambiguous intent to benefit Yippee as a third-party Producer under the Terms.

29

Finally, under the third prong, Yippee's enforcement of the agreement is consistent with the "objectives of the *enterprise* embodied in the contract" and "the reasonable expectations of the contracting parties." *Goonewardene*, 6 Cal. 5th at 831. The Terms' objective is to "govern [a Yippee subscriber's] use of" the streaming service that Vimeo powers. (ER-78; ER-98.) Plaintiff's VPPA claim arises from, and is dependent upon, her Yippee subscription and her streaming of Yippee content through the Vimeo service. Accordingly, Yippee is a third-party beneficiary because the Terms underlie, "arise[] out of and, indeed, bolster[] the operation of" Yippee TV's platform. *Fernandez v. Debt Assistance Network, LLC*, No. 19-cv-1442, 2020 WL 583973, at *7 (S.D. Cal. Feb. 6, 2020) (non-signatory defendant was a third-party beneficiary of arbitration agreement because plaintiff could not fulfill obligations to defendant "[b]ut for the [agreement containing the arbitration clause]"). The Terms also expressly define and extend to Producers like Yippee, making clear that Yippee's enforcement is consistent with the parties' reasonable expectations. As a clear third-party beneficiary of the Terms, including the arbitration clause, Yippee can enforce those Terms against Plaintiff.

## CONCLUSION

For the foregoing reasons, the Court should reverse the District Court's Order and remand with instructions to compel Plaintiff's VPPA claim to individual arbitration and stay this action pending completion of the arbitration.

Dated:  February 12, 2025      **FOLEY & LARDNER LLP**
Rajiv Dharnidharka
Jeanette Barzelay
John J. Atallah


/s/ *Rajiv Dharnidharka*
Rajiv Dharnidharka

*Attorneys for Appellant*
*Yippee Entertainment, Inc..*

## CERTIFICATE OF SERVICE

I hereby certify that we electronically filed the foregoing Appellant's Opening Brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system on February 12, 2025.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated:  February 12, 2025                     /s/ *Rajiv Dharnidharka*
                                                  Rajiv Dharnidharka
                                                  *Attorneys for Appellant*
                                                  *Yippee Entertainment, Inc.*